UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Horace Abney, Jr. #316024, | ) | C/A No. 5:14-4084-RBH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Horace Abney, Jr. ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 15, 16.

On January 20, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the

court advised Petitioner of the summary judgment procedures and the possible consequences if

he failed to respond adequately to Respondent's Motion. ECF No. 17. On April 6, 2015,

Petitioner filed his response in opposition to Respondent's Motion for Summary Judgment. ECF

No. 26. Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.      Factual and Procedural Background

Petitioner was indicted by a Greenville County Grand Jury in June 2000 for trafficking in

cocaine. App. 262.[1] On December 11, 2002, a jury trial was conducted in Petitioner's absence

("*in abstentia*") before the Honorable C. Victor Pyle in Greenville, South Carolina. App. 24-126.

---

[1] Citations to "App." refer to the appendix of the record that was before the Post-Conviction
Relief ("PCR") court. It is on the docket of this case at ECF No. 16-1.

Attorney Andrew R. Mackenzie represented Petitioner and Assistant Solicitor Allen O. Fretwell represented the State. App. 24. Petitioner was convicted of one count of trafficking in cocaine. App. 123, 263. Because Petitioner was not present for the trial, a sealed sentence was entered on the same day that the jury's verdict was rendered. App. 125. On June 15, 2006, the sentence was unsealed and the Honorable John C. Few personally imposed the thirty-year sentence on Petitioner. App. 132, 261.[2]

Trial counsel timely filed and served the notice of appeal, and Petitioner, represented by M. Celia Robinson, Esq. of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a final brief, raising the following issues on direct appeal (quoted verbatim):

> 1. Did the Circuit Court Judge err in denying appellant's motion for a new trial?
>
> 2. Did the Circuit Court Judge err in denying appellant's motion to dismiss the indictment with prejudice pursuant to the Interstate Agreement on Detainers (IAD)?

App. 164. The State of South Carolina was represented in the appeal by Assistant Attorney General Christina J. Catoe. App. 178. On September 20, 2010, the South Carolina Court of Appeals issued an unpublished opinion affirming Petitioner's conviction. App. 194-95; *State v. Abney*, Op. No. 2010-UP-414, 2010 WL 10080226 (S.C. Ct. App. Sept. 20, 2010). The remittitur was issued on October 8, 2010. ECF No. 16-3. Petitioner did not seek discretionary review to the South Carolina Supreme Court.

Petitioner filed a PCR application on January 19, 2011. App. 196-204. In his application Petitioner raised the following grounds for relief:

---

[2] As noted, the case was tried before Judge Pyle, but the sentence was imposed by Judge Few. For purposes of this Report, unless otherwise specified, relevant judicial actions by either of these judges will be referred to as action of "the trial court."

(a) Ineffective Assistance of Counsel. (Trial + Appeallate [sic])

(b) Subject Matter Jurisdiction

(c) Violation of Constitutional Rights (4, 5, 6)

App. 197. In a handwritten addendum to his PCR application, Petitioner submitted the following particulars of his claims:

I – 9(A)

Ineffective Assistance of Trial Counsel.

Counsel failed to seek a continuance.

Counsel objected to clients trial in absentia, yet failed to seek a continuance. In order to contact client to find out why he didn't appear at trial.

Ineffective Assistance of Appellate Counsel.

On September 24, 2001, a hearing was held on applicant's motion to suppress the drug evidence that was seized during a traffic stop. In utilizing the procedures that has been established by the laws and rules of this State for issues to be reviewed by this State's Appellate Courts, it is evident that this issue was preserved for the Court of Appeale [sic] review. Thus, creating an argument concerning this point would be superfluous. When asked to raise this issue appellate counsel ignored request and failed to raise a valid issue.

II – 9(B)

Subject Matter Jurisdiction.

Trial counsel failed to prepare for trial.

Right to effective assistance of counsel contemplates guiding hand of able and responsible lawyer devoted solely to intrest [sic] of his client who has ample opportunity to acquaint himself with law and facts of case, and is afforded opportunity to present them to court or jury in thier [sic] most favorable light. Counsel failed to prepare for trial, had he prepared he would have saw that two different agencies handled applicants case.

III – 9(C)

Violation of 4, 5, 6, and 14th Amendmants [sic]

3

> Applicant did not give consent to vehicle search nor was the proper procedures followed in a traffic stop.
>
> Violation of applicant's 5, 6, and 14th amendmant [sic]. A leading principle that pervades the entire law of crminal [sic] procedure is that after indicment [sic] has been found nothing shall be done in the absence of the accused whose duty is to be present at all stages of the trial. The right of the accused to be present at the trial is grounded in common law and shall not be disturbed. Applicant was incarcerated in another state when trial was being held. Therefore one cannot waive his right to be present when one does not even have the right to move about freely.

App. 202-04.

The State, through Assistant Attorney General Karen Ratigan, made its return to the PCR application on May 26, 2011. App. 206-11. Petitioner, through counsel, filed an amended PCR application on July 1, 2011. App. 212-16. Petitioner's counsel raised the following additional claims:

> (A) The Applicant was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 14 of The South Carolina Constitution.
>     . . . .
> (a) The applicant was provided with deficient representation by his attorney, in that the conduct of his attorney was objectively unreasonable under the circumstances. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The outcome of the applicant's proceeding was prejudiced, and it is reasonable probable that the outcome would have been different had counsel's performance not been deficient. <u>Strickland</u>, 466 U.S. at 694. Defense counsel was ineffective based on one or more of the following:
>
> 1.    My defense attorney failed to conscientiously discharge his professional responsibilities while he was handling my case.
>
> 2.    My defense attorney failed to effectively challenge the arrest and seizure of Applicant.
>
> 3.    My defense attorney failed to act as my diligent, conscientious advocate.
>
> 4.    My defense attorney failed to give me his complete loyalty.

5.      My defense attorney did not have my best interest in mind while he was supposed to be investigating and preparing my case.

6.      My defense attorney failed to serve my cause in good faith.

7.      My defense attorney neglected the necessary investigations and the preparation of my case.

8.      My defense attorney dd [sic] not do the necessary factual investigations on my behalf.

9.      My defense attorney did not do the necessary legal research.

10.     My defense attorney did not conscientiously gather any information to protect my rights.

11.     My defense attorney did not try to have my case settled in a matter that would have been to my best advantage.

12.     My defense attorney did not advise me of all my rights or take any of the actions that were necessary to protect preserve them; knowing that I was not versed in the law.

13.     My defense attorney, knowing I was illiterate in the law, never properly ascertained whether or not I actually understood or comprehended all of the issues that were involved in my case.

14.     My defense attorney never properly consulted with me or kept me informed with what was going on as far as my case was concerned.

15.     My defense attorney never explained to me or discussed with me any of the elements of the crime charged.

16.     My defense attorney never made any attempt to ascertain whether or not I actually knew what the elements fo [sic] the crime charged were or whether or not I understood exactly what the term "criminal" [sic] element" actually meant.

17.     My defense attorney never explained to me or discussed with me how the elements of the crime charge [sic] and the evidence that the prosecution planned to introduce into evidence against me related to one another and did not discuss how the sentencing would be done especially as it related to the elements of the crime as in State V. Boyd.

18.    My defense attorney never informed me of any of the defenses that were available to me.

19.    My defense attorney never intended to offer any defense to the court on my behalf.

20.    My defense attorney never explained to me or discussed with me any kind of defense strategy.

21.    My defense attorney never explained to me or discussed with me any of the tactical choices that they either made or were planning to make.

22.    My defense attorney dictated to me exactly how my case was going to be handled and offered no alternative options.

23.    My defense attorney failed to properly acquaint themselves [sic] with the law and the facts surrounding my case and as a direct result of their [sic] intentional negligence, there was a very serious error in their [sic] assessment of both the law and the facts.

24.    Because of my defense attorney's gross neglect and his many legal errors no defense at all was put in issue for me during the Court proceedings.

25.    My defense attorney did not subject the prosecution's case to any adversarial testing.

26.    My defense attorney failed to oppose the prosecution's case with any adversarial litigation.

27.    My defense attorney failed to function as the government's adversary in any sense of the word.

28.    My defense attorney failed to pursue any of the legal recourse that were available to him.

29.    The attorney that represented me on this charge in Court failed to function as the counsel that the Constitution's Sixth Amendment Guarantees.

30.    My defense attorney failed to call alibi witnesses on my behalf which would have proven my innocence.

31.    My defense attorney failed to appeal my case after I was convicted when I wanted to appeal.

App. 212-15. On October 30, 2012, an evidentiary hearing was conducted on the PCR application in Greenville, South Carolina before the Honorable Markley Dennis, Jr. Petitioner was represented by Rodney Richey ("PCR counsel") at the hearing and the State was represented by Assistant Attorney General Karen Ratigan. App. 217-50. Petitioner and his former defense attorney, Andrew Mackenzie ("trial counsel"), testified at the hearing. App. 218, 220-34, 235-42.

On January 9, 2013, the PCR court issued an order granting Petitioner relief and making the following findings of facts and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann.§ 17-27-80 (2003).

### <u>Ineffective Assistance of Appellate Counsel</u>

At the PCR hearing, the Applicant proceeded upon the allegation that he received ineffective assistance of appellant counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." <u>Frasier v. State</u>, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of appellant counsel, he must show both: (1) that his appellant counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984); <u>Porter v. State</u>, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006).

On September 24, 2011, a hearing was held in the Applicant's case. This hearing was held on the Applicant's motion to suppress drug evidence that was seized during a traffic stop. The Applicant's trial counsel argued this motion before Judge Pyle. At the conclusion of this hearing, Judge Pyle ruled that the evidence would not be suppressed. At the Post Conviction Relief hearing, the Applicant testified that he requested the appellate counsel brief the issue that

related to the denial of the suppression motion. Applicant testified that he believed that this was an important issue and that it had merit. He further testified that due to the nature of the case the drug evidence was critical for the prosecution.

The trial counsel testified that he believed the suppression motion had merit. He believed this issue should have been briefed and appealed by appellate counsel. Trial counsel stated he did not believe that the officer had Applicant's permission to search his car during the traffic stop. Moreover, he testified the drug evidence was critical in prosecuting the case.

This Court finds the Applicant met his burden of proving appellate counsel was ineffective. The Court finds that the prosecution of the Applicant hinged on the admissibility of the drugs recovered during the traffic stop. If this evidence was suppressed it would have greatly affected the State's efforts to prosecute the Applicant. Moreover, the Court finds this issue was properly preserved by trial counsel. This Court finds that appellate counsel's failure to brief the suppression issue prejudiced the Applicant.

Accordingly, this Court finds the Applicant met his burden of proving appellate counsel's performance was deficient under the first prong of the Strickland test. This Court also finds the Applicant has proven the second prong of Strickland -- that he was prejudiced by counsel's performance. Accordingly, this Court finds the Applicant has met his burden of proving appellate counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

### Ineffective Assistance of Plea Counsel

The Applicant alleges that trial counsel did not effectively represent him. The Applicant makes four assertions. (1) Trial Counsel should have moved for a continuance at the start of trial. (2) Trial counsel should have asked for the minimum sentence (25) at the time of sentencing. (3) Trial counsel should have argued that all parties knew prior to his trial that he was leaving the State thus it was not an issue of him voluntarily leaving the state before trial. (4) Trial counsel should have requested that the drug be suppressed because they were tested by the DEA instead of SLED and the State did not have the form 7 document before trial.

The Court heard the testimony, reviewed the evidence and reviewed the court file. The Court finds that the Applicant's allegations against trial counsel are without merit. The Court finds that trial counsel went over and beyond the standard as set for [sic] in Strickland. Therefore, the Court finds that the Applicant has not met his burden for ineffective assistance of counsel as to trial counsel.

8

**All Other Allegations**

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

**CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has met his burden of proving appellate counsel did not provide effective representation under the <u>Strickland v. Washington</u> standard. Therefore, the Applicant's convictions are vacated and remanded for a new trial.

App. 255-58.

The State filed a Notice of Appeal on January 22, 2013. ECF No. 16-4. On August 8, 2013, the State filed a Petition for Writ of Certiorari to the South Carolina Supreme Court, arguing that "[t]he PCR judge erred in finding Respondent met his burden of proving appellate counsel was ineffective in failing to raise the issue of whether the motion to suppress should have been denied." ECF No. 16-5 at 2. On November 25, 2013, Petitioner filed his Return to the Petition for Writ of Certiorari. ECF No. 16-6. On October 1, 2014, the South Carolina Supreme Court issued a Memorandum Opinion reversing the grant of post-conviction relief. ECF No. 16-7; *Abney v. State*, No. 2013-000136, 2014 WL 4930768 (S.C. Oct. 1, 2014). The remittitur was issued on October 17, 2014. ECF No. 16-8. This federal habeas petition followed on October 16, 2014. ECF No. 1-2; *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court).

II.    Discussion

  A.    Federal Habeas Issues

  Petitioner raises the following issues in his federal Petition for Writ of Habeas

Corpus, quoted verbatim:

### GROUND ONE

**(a).**    The State Court erred in denying Petitioner's motion for a new trial, and was objectively unreasonable in light of the evidence presented when the State Court tried Petitioner abstensia [sic].
  . . . .

**(b).**    The State Court erred in denying Petitioner's motion to dismiss the indictment with prejudice pursuant to the mandate of the Interstate Agreement Detainers (IAD).
  . . . .

### GROUND TWO

Petitioner was denied Effective Assistance of Appellate, and the subsequent reviewing State Court's decision was contrary to and objectively unreasonable in light of the evidence presented.
  . . . .

### GROUND THREE

Ineffective Assistance of Counsel

(a).    Petitioner submits he was denied the effective assistance of trial counsel when counsel "failed" to move the Court for a "continuance" prior to the commencement of trial.

ECF No. 1-1 at 3, 7, 10, 13.

  B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

    C.    Habeas Corpus Standard of Review

        1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134

F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). More recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on ineffective assistance of counsel claims).

12

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

[A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is

entitled to relief under § 2254(d)(2) only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. *See Douglas v. California*, 372 U.S. 353, 357 (1963) (initial appeal); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (trial). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting that the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399. In the *Pinholster* case, the district court conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional

14

evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

15

a.       Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –

   (A) the applicant has exhausted the remedies available in the courts of the State; or

   (B)(i) there is an absence of available State corrective process; or

      (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

   (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

   (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal or (2) by filing a PCR application. State law requires

16

that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural

17

bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from

18

considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention of procedural bypass, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice

in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner

must demonstrate more than plain error.

> 3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that

his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a

reasonable probability exists that but for counsel's error, the result of the proceeding would have

been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and

prejudice in his ineffective-assistance-of-counsel claim. *Id.*

> D.    Analysis of the Petition

> 1.    Ground One(a): Denial of Motion for New Trial

Petitioner contends that his federal constitutional rights were violated when the trial court

conducted a jury trial on his pending cocaine trafficking charge because he did not voluntarily

waive his right to be present. ECF No. 26 at 11-14. Respondent contends that the trial was

properly conducted in Petitioner's absence because Petitioner agreed to that procedure when he

signed his bond documentation and because Petitioner's failure to receive actual notice of his

trial date was the direct consequence of Petitioner's own voluntary behavior. ECF No. 16 at 15-

19.

It is settled that a defendant has a constitutional "right 'to be present at all stages of the

trial where his absence might frustrate the fairness of the proceedings.'" *United States v. Rolle*,

204 F.3d 133, 136 (4th Cir. 2000) (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15

(1975)). However, the right to be present at one's own trial is waiveable in both federal and state

courts, so long as the waiver is both knowing and voluntary. *See Taylor v. United States*, 414

U.S. 17, 19-20 (1973); *Illinois v. Allen*, 397 U.S. 337, 342-43 (1970); *see also State v. Bell*, 360

S.E.2d 706, 711 (S.C. 1987); *Ellis v. State*, 227 S.E.2d 304, 305 (S.C. 1976). Under Rule 16 of

the South Carolina Rules of Criminal Procedure,

> a person indicted for misdemeanors and/or felonies may voluntarily waive his
> right to be present and may be tried in his absence upon a finding by the court that
> such person has received notice of his right to be present and that a warning was
> given that the trial would proceed in his absence upon failure to attend the court.

S.C.R. Crim. P. 16. South Carolina case law also requires a trial court to make these findings

before a criminal trial may be held in the defendant's absence. *State v. Jackson*, 341 S.E.2d 375,

375 (S.C. 1986). The Fourth Circuit Court of Appeals has stated:

> [T]the United States Supreme Court has increasingly cautioned . . . [that] review
> of state court decisions on federal constitutional claims is a highly constrained
> one. We are not at liberty to substitute our judgment for that of the state court on
> matters of federal constitutional law, even if we believe the state court decision
> was incorrect. "The question . . . is not whether a federal court believes the state
> court's determination was incorrect but whether that determination was
> *unreasonable* -- a substantially higher threshold."

*Fowler v. Joyner*, 753 F.3d 446, 457 (4th Cir. 2014) (emphasis added) (quoting from *Schriro v.

Landrigan*, 550 U.S. 465, 473 (2007)). Under applicable federal law, a state court's factual

findings are entitled to deference in this action. *See Cagle v. Branker*, 520 F.3d 320, 324 (4th

Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("to overturn a state court's credibility judgments in a

federal habeas action, the state court's error must be stark and clear"); *see also Marshall v.

Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no

license to re-determine credibility of witnesses whose demeanor has been observed by the state

trial court, but not by them."). Petitioner may overcome this presumption of correctness of the

trial court's findings only by showing "'clear and convincing evidence to the contrary.'" *Wilson

v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322,

240 (2003)).

With respect to the issue presented in this Ground, the record discloses that when Petitioner did not appear in court on the date set for his trial, the State moved to try him *in abstentia*. In support of its motion, the State presented testimony showing that, on November 26, 2002, Greenville County authorities mailed a notice card to the only address that Petitioner had provided to them. The card indicated that Petitioner's trial on the pending cocaine-trafficking charge was to begin on Wednesday, December 11, 2002 at 8:30 A.M. App. 21-31. The State also presented evidence of certain provisions of the documentation that Petitioner signed when he posted bond after being arrested in Greenville County that indicate Petitioner's agreement to be tried outside his presence if he did not appear for trial. App. 22. In response, Petitioner's trial counsel objected to the State's motion for trial *in abstentia*, but he did not provide the trial court with any explanation for Petitioner's absence. App. 31-34. The trial court found that Petitioner was sufficiently notified of the trial and granted the State's motion to try him *in abstentia*. App. 33-34. Following the State's presentation of evidence, including Petitioner's trial counsel's cross examination of the State's witnesses and presentation of closing argument to the jury, the jury convicted Petitioner on the cocaine-trafficking charge. App. 123.

After being released from his North Carolina incarceration, Petitioner personally appeared in Greenville County at a sentencing hearing on June 15, 2006. Petitioner's trial counsel had previously filed a motion for new trial in the trial court, asserting that the trial *in abstentia* was unconstitutional, and that motion was considered by the trial court at the sentencing hearing. App. 137-51. Petitioner testified at the sentencing hearing that he did not appear for his Greenville County trial on December 11, 2002 because he was incarcerated in North Carolina from December 10 through 12. App. 140. He testified that he previously received "bond cards" in the mail at his father's residence and then personally appeared "anywhere from

seven to nine times" at pretrial proceedings held in Greenville County during the two years that his criminal charge was pending before being called for trial. App. 139-40. Petitioner further testified that, had he not been incarcerated in North Carolina on the date that was set for his trial, he would have been at trial. App. 142. Petitioner admitted that he was not aware that his trial was set to begin on December 11 because he never received the notice card that the State authorities sent to him at his father's residence. Petitioner testified that he stopped residing at that address eight months before the card was sent, that his father did not inform him that he had received any mail, and that he did not ask his father about whether he received any mail during the period of his absence from the address. App. 143-44. Petitioner also acknowledged that he never contacted the Greenville County Solicitor's Office, his trial attorney, or the Greenville County Clerk's Office to let them know that he was no longer living at the address he had provided when he was granted bond on his pending charge. App. 144-45. Petitioner also confirmed that he did not inform his trial counsel that he was incarcerated in North Carolina and that he signed the bond document that provided, "I understand and have been informed that I have a right and an obligation to be present at trial and should I fail to attend the court, the trial will proceed in my absence." App. 147-49. The sentencing court denied Petitioner's motion for new trial, specifically noting that Petitioner's absence from trial "was absolutely his fault. It was not anything that the State did." App. 151.

The trial court concluded that Petitioner voluntarily waived his right to be present because "he was advised on his bond form that his trial would proceed in his absence upon his failure to attend court . . . [a]nd he received notice of his right to be present for trial today." App. 33-34. The trial court was in the best position to determine the credibility of the witnesses who testified before it, and the record discloses that it reasonably discredited Petitioner's assertion

23

that he did not voluntarily waive his right to be present and that he would have been at the trial had he known the trial date because of other record evidence that contradicted Petitioner's assertions. For example, as noted above, Petitioner admitted that he would not have been aware of his trial date even if he had not been incarcerated because he no longer lived at the address he provided to Greenville County authorities on his bond sheet and he was not receiving or even asking about mail from there. Petitioner did not make any effort to inform anyone connected to the Greenville County courts at any point that he was not living at the address they had on file for him, he did not check with anyone who did still live at that address about whether or not he received any mail, and he did not contact his own attorney to give him an alternative address or to let him know that he was no longer residing with his father. Giving the state court's factual findings and legal conclusions the appropriate deference, the undersigned finds that the decision that Petitioner voluntarily waived his right to be present at trial through his own lack of effort to keep himself informed of matters affecting the drug-trafficking charge that was pending against him in South Carolina was entirely reasonable in light of the evidence presented. Also, the trial court's decision that the trial *in absentia* did not violate Petitioner's rights was not an unreasonable application of existing federal law. *See Fairey v. Sec'y, Fla. Dep't of Corr.*, Civil Action No. 4:09-cv-1610-SB-TER, 2010 WL 3699959, at *8 (D.S.C. Aug. 2, 2010) (habeas relief denied where petitioner failed to provide the court with his new address and was tried *in absentia* because he did not receive notice of the trial); *Nicholson v. Rushton*, No. 9:01-3318-19BG, 2002 WL 3233315, at *7 (D.S.C. Oct. 1, 2002) (trial *in absentia* did not violate the petitioner's constitutional rights when he left courthouse after indictment was amended and did not return for trial). *Cf. Whittlesey v. Cir. Ct. for Baltimore Cnty.*, 897 F.2d 143, 145 (4th Cir. 1990) (a petitioner's "own unlawful acts" of escaping from custody and becoming incarcerated

24

in another state prevented his pursuit of habeas relief on his original conviction). Accordingly, Petitioner is not entitled to habeas relief on Ground One(a) in his Petition, and Respondent's Motion for Summary Judgment on that ground should be granted.

2.    Ground One(b): Denial of Motion to Dismiss Indictment

Petitioner contends that the trial court improperly denied his motion to dismiss the indictment against him because the State failed to comply with the IAD when it did not finalize his case within 180 days of his request that it do so. ECF No. 26 at 14-19. Respondent asserts that this Ground is not cognizable in this habeas corpus action because claims of IAD violation are statutory, not constitutional, claims. ECF No. 16 at 19-20. Alternatively, Respondent contends that the trial court's determination that the IAD was inapplicable in Petitioner's case was a reasonable application of federal law. ECF No. 16 at 20-21.

Article III of the IAD provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state *any untried indictment, information or complaint* on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . .

S.C. Code Ann. § 17-11-10 (emphasis added). In *Carchman v. Nash*, 473 U.S. 716 (1985) (involving probation-violation charges), the United States Supreme Court decided that the phrase "untried indictment" in the IAD refers to criminal offenses for which a defendant would be "brought to trial" and not to offenses for which he had already been "tried and convicted." *Id*. at 725-26. In particular, the Supreme Court found that "[b]y its terms . . . Art. III does not apply to all detainers, but only to those based on 'any untried indictment, information or complaint.'" *Id.*

25

at 727. Although two federal circuit courts have determined otherwise, *see United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980) (involving a federal prisoner's claim under 28 U.S.C. § 2255); *Cody v. Morris*, 623 F.2d 101, 103 (9th Cir. 1980) (involving a state prisoner's claim under 28 U.S.C. § 2254), the Fourth Circuit Court of Appeals has held that an IAD claim is not cognizable in a federal habeas-corpus case because it is a statutory claim that does not result in a "fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Pethel v. Ballard*, 617 F.3d 299, 304 (4th Cir. 2010); *see Bush v. Muncy*, 659 F.2d 402, 408-09 (4th Cir. 1981) (same). Also, this court has recognized and applied the Fourth Circuit precedent on this issue. *See Ayre v. South Carolina*, No. 9:09-674-HMH-BM, 2009 WL 4057158, at **3, 9 (D.S.C. Nov. 20, 2009).

The facts applicable to this Ground are that on January 29, 2004, a little over one year after the conclusion of Petitioner's December 11, 2002 trial *in abstentia* and the trial court's sealing of its sentence, the Greenville County Sheriff's Office sent a certified copy of a warrant for Petitioner's detainer ("the detainer") to the North Carolina Department of Correction, where Petitioner was incarcerated at the time. ECF No. 16-9 at 217-22. The cover letter stated that Petitioner was wanted for "Failure to Appear in Court, original charges being Trafficking Cocaine." *Id*. at 217. Petitioner signed the detainer form on March 11, 2004, using an alias of "Jamel Walker," which was the name under which he was incarcerated in North Carolina. *Id*. at 222. The North Carolina Department of Correction forwarded the signed form to the Greenville County Solicitor's Office on March 17, 2004, and later sent two letters to the same office on April 8, 2004 and June 25, 2004 with instructions on how to accept or assume "temporary custody" of Petitioner under the IAD. ECF No. 16-9 at 229-30. On July 7, 2004, the same Assistant Solicitor from Greenville County who represented the State at Petitioner's trial *in*

*abstentia* responded to the North Carolina Department of Correction's correspondence, stating "the Interstate Agreement on Detainers Act is inapplicable to [Petitioner] as he was tried in his absence . . . and found guilty. . . . [t]he detainer has been lodged purely for the purpose of retrieving this defendant upon the satisfaction of his North Carolina sentence here in Greenville County." ECF No. 16-9 at 231. On July 13, 2004, Petitioner's trial counsel sent a letter to the North Carolina Department of Correction, referencing the detainer lodged against Petitioner, providing an indictment number and contact information for the Greenville County Solicitor's Office, and "requesting that final disposition be made of this indictment pursuant to the Interstate Agreement on Detainers." *Id*. at 232. Petitioner's trial attorney also sent a letter to the Greenville County Solicitor on August 11, 2004, acknowledging that Petitioner was tried and convicted in his absence, but also stating that his client had not yet been sentenced, that a motion for new trial was pending, and that his client "is requesting that final disposition be made of the above referenced indictment." ECF No. 16-9 at 242. After Petitioner was released from North Carolina custody, he returned to Greenville County for his June 15, 2006 sentencing hearing during which his trial counsel moved to dismiss the indictment under the IAD. App. 130-31. After tentatively denying the motion, the trial court imposed its previously sealed sentence on Petitioner. App. 132. In its final ruling on the IAD-related motion, the state court stated that "the plain language written is it applies only to untried indictments. And this case was tried on an indictment and the sentencing was sealed because of his absence for trial. Therefore, I hold that the Act does not apply in this case." App. at 158.

Petitioner recognizes that the Fourth Circuit opinions cited above hold that IAD-violation claims are not cognizable under § 2254, but he attempts to distinguish the *Pethel* and *Charchman* opinions because they involved a guilty plea and a probation-violation charge respectively and

did not involve a trial *in abstentia* as here. ECF No. 26 at 16. However, such factual distinctions are not determinative of the cognizability of this Ground in this habeas action. The Fourth Circuit's holdings in *Pethel* and *Bush* that IAD-violation claims are not cognizable in habeas cases are based on that court's interpretation of statutory language and not on the specific facts of the respective IAD-violation claims involved. Moreover, Petitioner's reliance on the contrary decisions from the Ninth and Third Circuit in response to Respondent's assertions of non-cognizability is also unavailing because the Fourth Circuit's holdings in *Pethel* and *Bush* constitute binding precedent in this court. Accordingly, regardless of whether the trial court's decision on Petitioner's motion to dismiss the indictment was legally correct under *Carchman* or any other federal or state judicial opinion, this court should not consider the merits of Petitioner's Ground One(b) because it does not present a cognizable issue in this habeas case. Accordingly, Petitioner is not entitled to habeas relief on Ground One(b) in his Petition, and Respondent's Motion for Summary Judgment on this Ground should be granted.

3.    Ground Two: Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in failing to raise the trial court's denial of his motion to suppress evidence seized during a vehicle stop as an issue on his direct appeal, and that the South Carolina Supreme Court's reversing the PCR court's grant of relief on this issue was "objectively unreasonable." ECF No. 26 at 25-27. Respondent contends that appellate counsel was not ineffective in her determination of the strongest issues to present in the appeal, but, even if there were ineffectiveness, Petitioner did not sustain his burden of showing that he was prejudiced by it because the trial court properly refused to suppress the evidence. ECF No. 16 at 24.

It is well established under the "automobile exception" to the Fourth Amendment's warrant requirement that if there was probable cause to search a vehicle, then there is no requirement that law enforcement obtain a warrant before searching areas of the vehicle where contraband could reasonably be found. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *California v. Carney*, 471 U.S. 386, 390-91 (1985); *United States v. Smith*, 456 F. App'x 200, 208-09 (4th Cir. 2011). The United States Supreme Court has held that probable cause exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Also, the Fourth Circuit Court of Appeals has held that probable cause is a "'commonsense conception that deals with the factual and practical considerations of everyday life,'" and that courts faced with the issue of whether probable cause exists, must "examine the facts from the standpoint of an objectively reasonable police officer, giving due weight to inferences drawn from those facts by local law enforcement officers." *United States v. Kelly*, 592 F.3d 586, 592 (4th Cir. 2010) (quoting from *Ornelas*). The Fourth Circuit's opinion in *United States v. Carter*, cited by the South Carolina Supreme Court in its opinion reversing the PCR court's final judgment in Petitioner's case, held that a law-enforcement officer "clearly had probable cause to search the passenger compartment . . . without a warrant[ ] based on the burning marijuana he smelled as he approached the car." *Carter*, 300 F.3d at 422; *accord United States v. Johns*, 469 U.S. 478, 482 (1985); *United States v. Staula*, 80 F.3d 596, 602 (1st Cir. 1996); *United States v. Martin*, 360 F. App'x 686, 690 (7th Cir. 2010). The *Carter* opinion has subsequently been cited favorably in other Fourth Circuit cases and by several different federal courts, including this one. *See, e.g. United States v. Simon*, 600 F. App'x 89, 91 (4th Cir. 2015); *United States v. Givens*, 923 F. Supp. 2d 803, 813 (E.D. Va.

29

2013); *United States v. Owings*, No. 03-40040-01-RDR, 2003 WL 22002786, at *4 (D. Kan. July 28, 2003); *United States v. Mitchell*, No. 11-CR-6019, 2012 WL 6827387, at *7 (W.D.N.Y. Nov. 27, 2012); *Sellers v. United States*, Nos. 4:07-CR-901-TLW, 4:08-CV-70052-TLW, 2011 WL 4501399, *8 (D.S.C. Sept. 27, 2011). Also, as previously noted, even if a petitioner in a habeas-corpus action pursuant to § 2254 sustains the burden of proving that counsel was ineffective, it still must be proven that the petitioner was prejudiced by the ineffectiveness. *Strickland v. Washington*, 466 U.S. at 669.

A hearing on Petitioner's Motion to Suppress was held on September 21, 2001. App. 1-22. The record discloses that the state trooper who pulled Petitioner's vehicle over for speeding and then conducted the search that led to the discovery of cocaine in the vehicle's passenger compartment testified that he had considerable experience and training in the detection of marijuana and that he knew the smell of burnt marijuana as a result of that training and experience. App. 4-6. The trooper testified that he smelled burnt marijuana when he approached the open passenger-side window. App. 6-7. The trooper also testified that Petitioner seemed nervous during the stop and that he did not verbally consent or refuse to consent to a search of his vehicle. App. 7-8. The trooper testified that he took Petitioner's non-verbal behavior as an affirmative response to the requested search and then conducted a search of the inside of the vehicle. App. 9-10. Ashes were discovered in the ashtray of the vehicle and an unsmoked cigar and a package containing a significant amount of cocaine were discovered in a jacket that was on the front passenger seat. App. 10-11. On cross examination by Petitioner's trial counsel, the trooper admitted that no marijuana was found in the vehicle and that no "drug dog" was brought in to conduct a canine search of the vehicle. App. 13, 15. Also on cross examination, the trooper explained a recorded statement that he made to Petitioner following his arrest in which the

30

trooper told Petitioner in response to Petitioner's assertions that he did not have marijuana in the vehicle that he "must have smelled" cigars or cigarettes. The trooper testified that the statement was "a derogatory remark . . . toward [Petitioner]" because the trooper had previously told Petitioner "a couple of times" that he had smelled marijuana upon his approach to the vehicle. App. 14-15. Petitioner did not testify at the suppression hearing and he did not present any witnesses.

> The trial court denied the motion to suppress. In making its ruling, the court stated:

> The only testimony in this record before me is that the officer smelled marijuana. The only evidence in the record is that he is a trained officer that knows the smell of marijuana . . . . There is a South Carolina case that holds that marijuana alone is a sufficient basis to establish probable cause of -- for a search with respect to real estate or to a house. I don't need to reach the issue of consent in this case. And for the reasons stated, your Motion to Suppress is denied.

App. 21-22. Appellate counsel did not raise the search-and-seizure issue on appeal.

At the PCR hearing, Petitioner asserted that his appellate counsel should have raised the suppression issue in his direct appeal because he thought the search was a "clear" violation of the Fourth Amendment. App. 224-27. Petitioner also testified that appellate counsel "said in her determination, she would not raise that issue due to the fact being that she feels like the courts would rule against it anyway . . . ." App. 227. Petitioner's trial counsel testified that he thought that appellate counsel should have raised the suppression issue because it was preserved for review and that it was the issue that "was going to determine the outcome of the case." App. 236. Petitioner's appellate counsel did not testify at the PCR hearing.

The PCR court granted the PCR application based on the ineffective assistance of appellate counsel claim, finding "[r]ather or not Judge Pyle was correct, that's a discretionary ruling, but I think it should have been addressed and appellate counsel was ineffective. Who

knows, maybe the Appellate Court may reverse it, may send it back, but I think he's entitled to have that reviewed." App. 248. The PCR court stated in its final order:

> The Court finds that the prosecution of the Applicant hinged on the admissibility of the drugs recovered during the traffic stop. If this evidence was suppressed it would have greatly affected the State's efforts to prosecute the Applicant. Moreover, the Court finds this issue was properly preserved by trial counsel. This Court finds that appellate counsel's failure to brief the suppression issue prejudiced the Applicant.

App. 256.

The State filed a petition for writ of certiorari to obtain South Carolina Supreme Court review of the PCR final judgment. ECF No. 16-5. The court granted review and reversed the PCR court, stating:

> Although the issue was properly preserved for appellate review, there is no reasonable probability the Court of Appeals would have reversed respondent's conviction had appellate counsel raised the issue. *See Southerland v. State*, 337 S.C. 610, 524 S.E.2d 833 (1999) (holding petitioner must prove that, but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different); *see also United States v. Carter*, 300 F.3d 415 (4th Cir. 2002) (holding an officer's recognition of the smell of marijuana upon executing a traffic stop is sufficient to constitute probable cause to search both the suspect and the passenger area of the vehicle).

ECF No. 16-7; *Abney v. State*, No. 2013-000136, 2014 WL 4930768 (S.C. Oct. 1, 2014).

Petitioner argues that the Supreme Court did not properly apply the principles of *Strickland v. Washington* because it did not "address[] the issue of whether or not Petitioner was denied the effective assistance of appellate counsel in failing to brief a meritorious Fourth Amendment claim." ECF No. 26 at 25. However, Petitioner's reading of the Supreme Court's opinion is incorrect. Although it did not explicitly state that the PCR court incorrectly found that Petitioner sustained his *Strickland v. Washington* burdens of proof, the Supreme Court's citation of *Southerland v. State*, 337 S.C. 610, 524 S.E.2d 833 (1999) and its inclusion of an explanatory

32

parenthetical which states that the case holds that "petitioner must prove that, but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different" indicates its inferential holding that, regardless of any ineffectiveness of counsel, Petitioner did not sustain his additional burden under *Strickland* of proving that such ineffectiveness was prejudicial. Thereafter, the court's citation to *Carter* for the proposition that a law-enforcement officer's smell of marijuana emanating from a vehicle provides probable cause to search the vehicle without a warrant indicates the court's inferential determination that even if the issue had been raised by appellate counsel, it was not "a meritorious Fourth Amendment issue" as Petitioner claimed at the PCR hearing.

Additionally, Petitioner's attempt to factually distinguish *Carter* from his case based on the absence of a canine search of his vehicle, ECF No. 26 at 25, is unavailing because the *Carter* court did not base its decision about the search of a vehicle's passenger compartment on the presence of a "dog alert." Instead, the court's discussion of the dog alert applied to that portion of the opinion addressing the search of the trunk of the vehicle. *Carter*, 300 F.2d at 422. *Carter* and other federal cases have found that an officer's smelling of marijuana coming from a vehicle alone, regardless of any input from a drug dog, provides probable cause to search the passenger compartment of a stopped vehicle as was done in Petitioner's case. *See, e.g., Carter*, 300 F.3d at 422; *Staula*, 80 F.3d at 602-03; *United States v. French*, 974 F.2d 687, 692 (6th Cir. 1992); *Martin*, 360 F. App'x at 690.

Finally, Petitioner's contention that genuine issues of material fact are present with regard to the credibility of the state trooper's testimony about smelling marijuana because marijuana was not found in the car when it was searched and with regard to the issue of whether or not he consented to the search, ECF No. 26 at 21-22, does not preclude entry of summary

judgment on this Ground. The trial court's decision that the trooper had probable cause to search Petitioner's vehicle was predominately based on its determination of the credibility of the trooper's testimony at the suppression hearing. Although Petitioner's trial counsel valiantly cross-examined the trooper, Petitioner did not testify at the suppression hearing and he did not present any evidence that contradicted the trooper's statements about smelling marijuana when he approached Petitioner's vehicle or about the nature and extent of his training and experience in identifying such odors. The trial court was in the best position to make the required credibility determinations, and this court is required to accord substantial deference to such findings, particularly where, as here, the petitioner does not present any contradictory clear and convincing evidence. *Marshall v. Lonberger*, 459 U.S. at 434; *Cagle v. Brnaker*, 520 F.3d at 324; *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003). By accepting the trooper's testimony about the factual circumstances surrounding the subject vehicle stop and search, the trial court could then properly apply the holdings of federal cases such as *Carter, Staula, and French* cited above to find that the search was supported by probable cause. If there was probable cause to search the vehicle, then the issue of Petitioner's consent to search was, as the trial court noted, irrelevant. As a result, Petitioner's contentions that genuine issues remain as to the consent issue are irrelevant as well.

Based on the foregoing, the undersigned concludes that Petitioner was incorrect in his assertion at the PCR hearing that the suppression issue was "meritorious" because applicable federal law indicates that there was probable cause based on the officer's sense of smell; therefore, there was no Fourth Amendment violation in this case and no appellate court would reverse the trial court's denial of suppression on the facts presented. Thus, even if this court were to assume that Petitioner sustained his initial burden of showing that his appellate counsel

rendered ineffective assistance, it is clear that Petitioner did not sustain his additional burden of showing prejudice from the ineffectiveness. Because the trial court's decision was legally correct in light of the credible facts in the record, even if Petitioner's appellate counsel had presented the search-and-seizure issue in the direct appeal, the appellate court would not have ruled in Petitioner's favor and, therefore, Petitioner cannot show that he was prejudiced by his appellate counsel's performance. As a result, the undersigned finds that Petitioner has not shown that the South Carolina Supreme Court's decision reversing the PCR court on this point resulted in an unreasonable application of existing federal law in any way. Accordingly, Petitioner is not entitled to habeas relief on Ground Two in his Petition, and Respondent's Motion for Summary Judgment on this Ground should be granted.

4.    Ground Three: Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was ineffective for failing to ask for a continuance so that he could find out where Petitioner was located before the trial proceeded in Petitioner's absence. ECF No. 26 at 27-30. Petitioner also contends that his PCR appellate counsel's failure to raise this issue in Petitioner's response or cross petition to the State's petition for writ of certiorari constituted ineffective assistance of counsel that excuses procedural default in light of the United States Supreme Court's opinion in *Martinez v. Ryan*. *Id*. at 30. Respondent contends that Petitioner's Ground Three has been procedurally defaulted because the PCR court's denial of relief on this issue was not raised in a cross petition for writ of certiorari to the South Carolina Supreme Court. ECF No. 16 at 25. Alternatively, Respondent contends that the PCR court's denial of relief on this Ground was reasonable because trial counsel's objection to the trial court's holding Petitioner's trial *in abstentia* showed effective representation on this issue regardless of the lack of an explicit motion to continue the case. *Id*. at 25-26.

35

Petitioner's trial counsel testified that he believed he was asking for a continuance by objecting to a trial in Petitioner's absence. App. 236-37. The PCR court found that trial counsel was not ineffective by objecting to the trial *in absentia* but not explicitly asking the court for a continuance. App. 246-47. In this regard, the PCR court stated:

> I appreciate the applicant's position that he should have continued it so he could find it out, but people need to understand that somewhere along they [sic] line they have a responsibility to keep the lawyer advised too. It's not just a one way street, and there's an equal burden. I didn't hear one word about I tried to get him, I couldn't, they wouldn't let me call or anything of that nature. Counsel is not supposed to be clairvoyant, I don't believe, and presume that he's incarcerated somewhere.

App. 246. Petitioner's PCR appellate counsel filed a return to the State's petition for certiorari raising the issue of the propriety of the PCR court's grant of relief to Petitioner, but that return did not include a cross petition or any argument raising the issue of the PCR court's rejection of Petitioner's claim of ineffectiveness of trial counsel. ECF No. 16-6.

As previously noted, under § 2254, this court cannot consider the merits of a ground presented for habeas relief unless that ground has been presented to all state courts authorized to consider such issues. If a ground is not presented to all levels of the state judiciary that could have considered it, the ground is considered procedurally barred. *See Matthews v. Evatt*, 105 F.3d at 911. An appeal (by way of petition for writ of certiorari) of an unsuccessful PCR issue to the South Carolina Supreme Court is the final step required in the exhaustion of state court remedies under § 2254. *See State v. McKennedy*, 559 S.E.2d at 853; *see* S.C. Code Ann. § 17-27-100; SCACR 227. In *Martinez v. Ryan*, 132 S.Ct. at 1316-18, the United States Supreme Court carved out a narrow exception to the longstanding rule established in *Coleman v. Thompson*, 501 U.S. at 752-53, that ineffectiveness of PCR counsel may not be considered in habeas cases filed pursuant to § 2254. Under *Martinez*, ineffective assistance of initial PCR counsel, but not

appellate PCR counsel, may constitute cause for a procedural default. *Martinez*, 565 U.S. at _,
132 S. Ct. at 1309; *see Wannamaker v. Warden, Graham Corr. Inst.*, No. 9:13-cv-02934-TLW,
2014 WL 6473605, at *8. This fact has been recognized by the Fourth Circuit and in many of
this court's decisions on habeas matters. *See, e.g.*, *Johnson v. Warden of Broad River Corr. Inst.*,
No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013); *Johnson v. Cartledge*, No. 12-
1536, 2014WL 1159591, at *10 (D.S.C. Mar. 21, 2014); *Cross v. Stevenson*, No. 11-2874, 2013
WL 1207067, at *3 (D.S.C. Mar. 25, 2013); *Rodriguez v. Padula*, No. 11-1297, 2014 WL
1912345, at *7 (D.S.C. May 12, 2014).

Petitioner does not dispute the fact that his PCR appellate counsel did not file a cross-
petition for writ of certiorari to the South Carolina Supreme Court to seek review of the PCR
court's rejection of his claim of ineffectiveness of trial counsel based on the lack of a motion for
continuance. Instead, as noted above, he contends that this court may excuse this procedural
bypass because of alleged ineffectiveness of his PCR appellate counsel. However, as the cases
cited above show, *Martinez* does not provide Petitioner with grounds for cause for his procedural
default of the issue of whether his trial counsel was ineffective for failing to request a
continuance in addition to objecting to the trial court's conducting Petitioner's trial *in abstentia*.
In the absence of cause for the default, any prejudice that Petitioner arguably suffered from the
bypass of the issue is irrelevant. *See Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990)
("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal
Court."). Because Petitioner's Ground Three was procedurally defaulted and the required cause
or prejudice has not been shown and Petitioner does not assert actual innocence, this court should
not consider the merits of this Ground. *Kornahrens v. Evatt*, 66 F.3d at 1362-63. Accordingly,

Petitioner is not entitled to habeas relief on Ground Three in his Petition, and Respondent's Motion for Summary Judgment on this Ground should be granted.

III.    Conclusion

The undersigned has considered Petitioner's Grounds for habeas-corpus relief and recommends that the Petition be dismissed. Accordingly, for the foregoing reasons, it is recommended that Respondent's Motion for Summary Judgment, ECF No. 15, be GRANTED and the Habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

June 24, 2015                                Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

      Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

      Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).